UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 16-21559-CIV-MORENO**

SLADJANA CORVO,

        Plaintiff,

vs.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES,

        Defendant.

_____/

## ORDER DENYING PETITION TO VACATE ARBITRAL AWARD

Plaintiff, Sladjana Cvoro, a seafarer, requests the Court vacate an arbitral award as void against public policy because the arbitrator applied Panamanian law. In so doing, the arbitrator precluded Cvoro from asserting a Jones Act claim against her employer Carnival Corporation for vicarious liability. Under the Jones Act, Cvoro claims Carnival is vicariously liable for the negligence of the shore-side physicians it hired to treat her carpal tunnel syndrome. Panamanian law does not recognize that cause of action, and instead requires she show that Carnival itself was negligent in hiring the shore-side physicians. Panamanian law also provides other avenues of relief, such as disability benefits. The arbitral award indicates that Cvoro did not pursue those potential avenues and therefore, the arbitrator did not award her a remedy. Having reviewed the distinctions between Panamanian and U.S. law, this Court does not find it necessary to vacate the arbitral award as void as against public policy.

THIS CAUSE came before the Court upon Plaintiff's Memorandum in Support of Petition to Vacate and/or Set Aside Arbitration Award (D.E. 67) filed on June 6, 2017.

THE COURT has considered the petition, the response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the petition to vacate the arbitral award is DENIED. It is also

ADJUDGED that all other pending motions are DENIED as moot as this case is closed.

## I.    Background

Plaintiff, Sladjana Cvoro, is a seafarer from Serbia, who was employed by the Defendant Carnival Corporation on the *Carnival Dream*. Cvoro sustained injuries when she was treated for carpal tunnel syndrome by a shore-side physician. She developed carpal tunnel while working on the *Carnival Dream*. To comply with its maintenance and cure obligations under maritime law, Carnival selected the shore-side physicians in Serbia to treat Cvoro's condition. Plaintiff is seeking to assert a Jones Act claim against Carnival for vicarious liability for the physicians' negligence, i.e. that Carnival is liable for the negligence of the shore-side doctor in Serbia.

At the outset, Cvoro did not file her Jones Act claim in U.S. courts because the parties' seafarer employment agreement contains mandatory arbitration and forum-selection clauses, which provide "[t]he place of arbitration shall be London, England, Monaco, Panama City, Panama, or Manila, Philippines, whichever is closer to the Seafarer's home country." The parties' agreement also contains a choice-of-law clause designating the governing law as the law of the ship's flag, in this case Panama.

Plaintiff filed an arbitration case in Monaco to recover for her injuries against Carnival, which included a U.S. Jones Act claim for vicarious liability. The arbitrator employed the agreement's choice-of-law provision to apply the law of Panama, where the *Carnival Dream* is registered. The arbitrator dismissed Plaintiff's Jones Act claim finding U.S. law did not apply to the proceeding. It is undisputed that Panamanian law does not recognize a cause of action for

vicarious liability. Plaintiff seeks to vacate the arbitral award claiming that the decision not to apply United States law deprived her of her Jones Act remedy in violation of public policy.

Notably, the parties' respective experts at the arbitration generally agreed on Panamanian law. Panamanian law recognizes a labor (contractual) cause of action and a tort cause of action for negligence against an employer. The labor claim under Panama law is the equivalent of a no-fault maintenance and cure claim under U.S. law. Plaintiff did not oppose the Defendant's position that it satisfied the obligations to provide assistance and medical care (maintenance and cure). Panamanian law also recognizes an available claim for disability compensation related to the underlying condition Plaintiff developed on board, but Plaintiff did not pursue it. Plaintiff also could have pursued a tort claim against Carnival for negligent hiring of the physicians. It is undisputed that Cvoro did not pursue these available avenues under Panamanian law. Cvoro claims it would have been futile to do so because she could obtain no record evidence from Carnival.

## II.     Legal Standard and Analysis

Agreements to arbitrate are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, popularly known as the New York Convention. The United States has acceded to the Convention, codified at 9 U.S.C. §§ 201-28. "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law.'" *Bamberger Rosenheim Ltd. v. OA Development, Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017) (quoting *AIG Baker Sterling Heights, LLC. v. Am. Multicinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)). Foreign arbitral awards are vulnerable to attack only on the grounds expressed in the articles of the Convention, particularly Article V. Article V states that an arbitral award "*may* . . . be refused . . . [if] [t]he recognition or enforcement of the arbitral award would be contrary to the public policy" of the country where recognition and

enforcement is sought. 21 U.S.T. 2517, Art. V(2)(b). The party defending against the enforcement of an arbitral award bears the burden of proof. *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011).

"'[T]he Convention's public policy defense should be construed narrowly' and applies where enforcement [of] the award 'would violate the forum state's most basic notions of morality and justice.'" *Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1241 (S.D. Fla. 2011)(quoting *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 974 (2d Cir. 1974)). "'Erroneous legal reasoning or misapplication of the law is generally not a violation of public policy within the meaning of the . . .Convention.'" *Id.* (quoting *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004)).

The Jones Act provides a cause of action for the negligent provision of medical care by a shore-side doctor selected by his or her employer to fulfill its maintenance and cure obligation and makes the employer vicariously liable for such negligence. *See Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1533 n.8 (11th Cir. 1990) (citing *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir. 1986)); *Central Gulf Steamship Corp. v. Sambula*, 405 F.2d 291, 302 (5th Cir. 1968) (stating a shipowner is vicariously liable for the negligence of a physician it chooses to treat its seafarer). The employer's vicarious liability under the Jones Act for the negligence of the shore-side physicians is completely distinct and separate from its liability for its own direct negligence in failing to properly select a competent physician in the first instance. *Fitzgerald v. A.L. Burbank & Co.*, 451 F.2d 670, 679-80 (2d Cir. 1971) ("[T]here are two ways in which the shipowner may have been negligent in exercising this duty. One is in

improperly providing for a seaman's care, including the negligent selection of a doctor; the other is in the negligence of the doctor himself.").

Like the plaintiff *Pysarenko v. Carnival Corp.*, No. 14-20010-CIV-MORENO, 2014 WL 1745048, at 1 (S.D. Fla. April 30, 2014), Cvoro argues that the arbitration deprives her of a Jones Act remedy under United States law. In *Pysarenko*, this Court held that claims under United States law are arbitrable. Here, however, the arbitrator chose not to adjudicate the Jones Act claim, finding United States law did not apply under the seafarer agreement. The question in this case is whether that decision violates this nation's public policy as embodied in *Garay*, *Sambula*, and *Fitzgerald*.

A.     *Lindo's Survey of case law*

In *Lindo*, 652 F.3d 1257 (11th Cir. 2011), the Eleventh Circuit examined a stream of cases analyzing this issue. *Lindo* differs from this case because the Eleventh Circuit in *Lindo* was deciding whether to enforce an arbitration provision, not whether to vacate an arbitral award. Nevertheless, *Lindo*'s analysis is instructive to this Court in deciding whether this arbitrator's decision violates U.S. public policy.

The seafarer, Harold Lindo, argued that because Bahamian negligence law applied to his arbitration, an order compelling arbitration operated as a prospective waiver of his Jones Act claim. That prospective waiver of the U.S. cause of action, he claimed, rendered the arbitration provision void as against American public policy. Supreme Court precedent, however, permits choice-of-law clauses to be enforced "even if the substantive law applied in the arbitration potentially provides reduced remedies (or fewer defenses) than those available under U.S. law." *Id.*, 652 F.3d at 1269. The Eleventh Circuit in *Lindo* extensively examined precedent, where the

Supreme Court enforced forum selection and choice-of-law clauses in contracts requiring arbitration in non-American forums and applying foreign law. *Id.*, 652 F.3d at 1264-1269.

In reviewing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Eleventh Circuit noted that the Supreme Court "announced a strong presumption in favor of enforcing such forum-selection clauses, despite the possibility that a markedly different result would be obtained if the case proceeded in English courts as opposed to American courts." *Lindo*, 652 F.3d at 1264. Two years later, in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), the Supreme Court compelled arbitration stating that "[a] contractual provision specifying in advance the forum in which disputes shall be litigated *and the law to be applied* is [] . . .an almost indispensable precondition to achieving of the orderliness and predictability essential to any international business transaction." *Id.*, 417 U.S. at 516. Next, the Eleventh Circuit analyzed *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) and *Vimar Seguros y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528 (1995). Both of these cases deal with the enforcement of an arbitration agreement, and not the enforcement of an arbitral award. After analyzing this Supreme Court precedent, the Eleventh Circuit concluded on several "overarching themes," listed below:

> (1) [C]ourts should apply a strong presumption in favor of enforcement of arbitration and choice clauses; (2) U.S. statutory claims are arbitrable, unless Congress has specifically legislated otherwise; (3) choice-of-law clauses may be enforced even if the substantive law applied in arbitration potentially reduces remedies (or fewer defenses) than those available under U.S. law; and (4) even if a contract expressly says that foreign law governs, as in *Vimar*, courts should not invalidate an arbitration agreement at the arbitration-enforcement stage on the basis of speculation about what the arbitrator will do, as there will be a later opportunity to review any arbitral award.

*Lindo*, 652 F.3d at 1269. The *Lindo* Court then analyzed the prior Eleventh Circuit case *Lipcon v. Underwriter's at Lloyd's London*, 148 F.3d 1285, 1288 (11th Cir. 1998), where the Eleventh

Circuit enforced forum-selection and choice-of-law clauses "despite the likelihood that the law to be applied in the foreign tribunal would accord the American plaintiffs fewer remedies than would be available under U.S. statutory law." *Lindo*, 652 F.3d at 1269. *Lipcon*, however, was not an arbitration case and was not subject to the Convention's Article V public policy defense to enforcing arbitral awards. *Id.*

Finally, the Eleventh Circuit in *Lindo* analyzed its past precedent, *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005), and *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009). In *Bautista*, the Eleventh Circuit compelled arbitration of the Plaintiff's seamen's claims, including claims under the Jones Act, in the Philippines. *Bautista*, 396 F.3d at 1303. *Thomas*, however, lends support for the Plaintiff's position in this case. In *Thomas*, the Eleventh Circuit refused to compel arbitration and concluded that "arbitration agreements that select any law other than U.S. law are unenforceable under the Convention because they eliminate a plaintiff's U.S. statutory claims *and* a plaintiff may possibly receive no award, precluding later court review." *Lindo*, 652 F.3d at 1275 (discussing *Thomas*).

*Lindo*'s language abrogates *Thomas* in two notable ways. First, the *Lindo* court finds the *Thomas* panel failed to follow *Bautista* by creating a new public policy defense under Article II of the Convention and in so doing, violated the prior panel precedent rule. *Lindo* also found *Thomas* violated *Vimar*'s holding that it is premature at the arbitration enforcement stage to make findings about how arbitrators will conduct the arbitral process, whether a claim will be heard, or whether the foreign-law remedies will be adequate or inadequate.

B.     *Public Policy*

In this case, the Court is analyzing the matter in the context of vacating an arbitral award. Therefore, the Court must decide if the arbitrator's decision to dismiss Cvoro's Jones Act claim violated Article V of the Convention – whether it is "contrary to public policy." Article V

expressly provides: "Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, Art. V(2)(b). The *Mitsubishi* Court stated "[t]he Convention reserves to each signatory country the right to refuse enforcement of an award where the 'recognition or enforcement of the award would be contrary to the public policy of that country.'" *Mitsubishi*, 473 U.S. at 638 (quoting Art. V(2)(b)).

Here, there are three American public policies in play. The United States has a strong federal policy favoring arbitration, which "applies with special force in the field of international commerce." *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft MBH & CIE, KG*, 783 F.3d 1010, 1017 (5th Cir. 2015). On the other hand, the United States also has an "explicit public policy that is well defined and dominant" with respect to seamen; maritime law provides "special solicitude to seamen. Seamen have long been treated as 'wards of admiralty' and the causes of action and remedies available to seamen reflect this special status." *Id.* And, as noted above, the Supreme Court has rejected the notion that all disputes must be resolved under American laws, even where foreign law provides a lesser remedy. In *Asignacion*, the Fifth Circuit addresses the effect of choice-of-law to a seafarer's claim and stated that "even with regard to foreign seamen, the United States public policy does not necessarily disfavor lesser or different remedies under foreign law." *Asignacion*, 783 F.3d at 1017 (discussing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959)).

These three policies are relevant in this case. Cvoro points to the American policy favoring seafarers to make her argument that this arbitral award should be vacated. In the context of a public policy defense to an arbitral award, the United States Supreme Court instructs

courts to consider the source of the policy to determine whether a statutorily protected right actually exists, in this case, the Jones Act. The Supreme Court in *Scherk* recognized the distinction as to whether federal case law implied the right of action at issue or whether the legislation itself establishes a special right. *Scherk*, 417 U.S. at 513-14. Here, the Jones Act does not explicitly provide for vicarious liability as the claim is asserted by Cvoro. The text of the Jones Act reads:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104. Plaintiff's theory of vicarious liability for the negligence of the shore-side physician stems from judicial application of the Jones Act, and not from its express language. The cases that establish vicarious liability are rooted in the employer's common law duty to provide maintenance and cure. *Central Gulf S.S. Corp. v. Sambula*, 405 F.2d 291 (5th Cir. 1968); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir. 1986). Therefore, the Court does not find that Plaintiff's claim is one that constitutes a well-defined and explicit U.S. policy.

### C. Violation of Public Policy

Even if Plaintiff's theory of vicarious liability constitutes a deeply rooted U.S. policy, the Court would need to find the arbitrator's decision violated that policy. Mindful of past precedent as was the Eleventh Circuit in *Lindo*, the Court examines whether the arbitrator's decision to apply Panamanian law violates U.S. public policy.

*Lipcon* pronounced the Eleventh Circuit's position that it "will not invalidate choice clauses, however, simply because the remedies available in the contractually chosen forum are

less favorable than those available in the courts of the United States." *Id.*, 148 F.3d at 1297. The *Lindo* court emphasized its agreement with *Lipcon*'s rationale. *Lindo*, 652 F.3d at 1283. It stated *Thomas*'s holding failed to "take into account our earlier precedent in *Lipcon*." *Id.* The Eleventh Circuit noted that "*Lipcon* closely resembles the public policy issue in *Thomas* – less favorable treatment in a foreign forum under foreign law. To the extent *Thomas* is an Article V case, *Thomas* wholly fails to take into account our earlier precedent in *Lipcon*." *Id.*

Of particular note in *Lipcon* is the Eleventh Circuit's statement that "we will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Id.* (quoting *Lipcon*, 148 F.3d at 1297); *see also Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1241 (S.D. Fla. 2011) (stating that a violation of the public policy is only shown where enforcement of the award "would violate the forum state's most basic notions of morality and justice."). That is the analysis this Court must employ at the award enforcement stage under Article V to determine if the award violates public policy. Plaintiff's mere inability to arbitrate her Jones Act claim does not in and of itself mean the award is unenforceable as against public policy. The question, rather, is what claims could Cvoro assert under Panamanian law and were those remedies under Panamanian law "so inadequate that enforcement would be fundamentally unfair."

### 1. Discussion of Remedies under Panamanian law

Both sides' experts in the arbitration recognized that under Panamanian law a shipowner can only be held liable for the negligent actions of medical doctors they provide to their injured crewmembers if there was some affirmative negligence on the shipowner's part. Shipowners can avoid liability by claiming they acted diligently and did not act negligently themselves in choosing a doctor. There is no pure vicarious liability claim under Panamanian law, only a claim for negligent hiring is recognized. *See Claimant's Statement of Claim* (D.E. 8-6). The arbitrator

concluded that "in view of [Cvoro's] failure to establish, let alone prove, any direct liability of [Carnival], the tort-based claim . . .must fail." Arbitration Decision (D.E. 1-6 at 8). Unequivocally, the arbitrator found that the claim premised on U.S. law for vicarious liability could not survive given the applicability of Panamanian law, and that Cvoro did not provide evidence to support Carnival's negligence in hiring the shore-side doctors, a claim that is cognizable under Panamanian law. *Id.* The arbitrator also noted that although Cvoro initially claimed Carnival failed to comply with its maintenance and cure obligations, later in the proceeding she did not contest Carnival's exhibit listing items showing it complied with its maintenance and cure obligations. The maintenance and cure obligations are recognized by Panamanian law, and the arbitrator noted "it would have been for Claimant to establish and, if necessary to prove," Carnival's failure to meet that obligation. *Id.* The arbitrator also noted that Cvoro did not pursue claims under Panamanian law for disability compensation.

The question is whether the distinctions between Panamanian and U.S. law require the Court to vacate the arbitral award. They do not. Even where the designated foreign law differs from U.S. law by a subtle distinction in remedy or calculation of damages, there is no violation of public policy. *See Chelsea Football Club, Ltd. v. Mutu*, 849 F. Supp. 2d 1341 (S.D. Fla. 2012); *Gonsalvez v. Celebrity Cruises, Inc.*, 935 F. Supp. 2d 1325 (S.D. Fla. 2013). Here, the record does not show that Cvoro attempted to pursue these remedies under Panamanian law. By her own admission, she claims she did not because to do so would have been futile. Given these potential avenues for recovery under Panamanian law, and Cvoro's failure to employ them, the Court cannot say these remedies were so inadequate as to render the proceeding and its result unfair.

The distinctions between Panamanian law and U.S. law do not overcome the presumption of enforcing the arbitral award especially in this case where the Plaintiff's theory of vicarious liability is not an explicitly "well-defined and dominant" U.S. policy, "rooted in basic notions of morality and justice." *W.R. Grace & Co. v. Local Union 749*, 461 U.S. 757, 766 (1983). Not all U.S. public law engages public policy acutely enough to require non-recognition of a Convention award. *Restatement Int'l Comm'l Arbit.*, § 4-18, Comment b.[1] Likewise, Cvoro's argument that pursuing a remedy under Panamanian law would be futile does not persuade the Court. Cvoro merely states the seafarer agreement would not allow her to compel information from Carnival, but she does not explain any efforts, much less failed ones, to obtain testimony or records to support a claim. Her statement about futility, without more, is insufficient to establish the arbitration proceeding was so inadequate that enforcement would be fundamentally unfair.

This ruling is in line with the goals of the Convention as the Court is charged with applying the defenses only in very narrow circumstances. *See Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 308 (3d Cir. 2006). Judicial restraint on the public policy defense is prudent because "[a]n expansive construction of this defense would vitiate the Convention's basic effort to remove preexisting obstacles to enforcement." *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974). Accordingly, the Convention's public policy defense does not require the

---

[1] The *Restatement Int'l Comm'l Arbit.*, § 4-18, Comment b reads: "As with other grounds for granting or denying post-award relief, public policy is interpreted in light of the presumption in favor of effectuating awards. To overcome the presumption, the award must violate a policy that is well-defined, deeply held, and rooted in basic notions of morality and justice. Public policy is not offended, for example, simply because an award misapplies governing law or gives effect to a law or policy at variance with U.S. law or U.S. foreign policy, provided that the award does not require contractual performance or other acts that violate U.S. public law. Nor is public policy properly implicated merely because the arbitral tribunal followed procedural evidentiary, or discovery practices unknown in the United States, or because it applied a rule of law different from U.S. Law or the law that a U.S. court would have applied to the dispute."

Court to vacate the arbitral award. *See Asignacion*, 783 F.3d at 1020 (holding a Philippine arbitral award was not so inadequate as to violate American public policy).

DONE AND ORDERED in Chambers at Miami, Florida, this \_\_\_\_\_ of April 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record